ORIGINAL

# IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO
### CIVIL DIVISION

**KEVIN AND JILL SCHMIT**
5490 Cannas Drive
Cincinnati, OH 45238

           **Plaintiffs,**

v.

**ABUBAKAR ATIQ DURRANI, M.D.**
4555 Lake Forest Drive
Suite 150
Cincinnati, Ohio 45242

And

**CENTER FOR ADVANCED SPINE**
**TECHNOLOGIES, INC.**
6905 BURLINGTON PIKE
FLORENCE, KY 41042

Serve: CT Corporation System
1300 East 9th St. Ste 1010
Cleveland, OH 44114
(Serve via Certified mail)

And

**JOURNEY LITE OF CINCINNATI, LLC**
10475 READING RD., SUITE 115
CINCINNATI, OH 45241

SERVE: CT CORPORATION SYSTEM
1300 EAST NINTH STREET
CLEVELAND, OH 44114
(Serve via Certified mail)

           **Defendants.**

Case No.     A 1 4 0 0 0 0 9

Judge

**COMPLAINT**
**& JURY DEMAND**

*REGULAR MAIL WAIVER*

*REGULAR MAIL WAIVER*

*REGULAR MAIL WAIVER*

FILED

2014 JAN -2 P 2: 36
TRACY WINKLER
CLERK OF COURTS
HAMILTON COUNTY, OH



D104769896 INI

1

Come now Plaintiffs, Kevin and Jill Schmit, and file this Complaint and jury demand, stating as follows:

## FACTUAL ALLEGATIONS OF PLAINTIFF

1.      At all times relevant, Plaintiffs, Kevin and Jill Schmit (hereinafter "Plaintiff," "Plaintiffs," or "Mr. Schmit"), were residents of and domiciled in the State of Kentucky.

2.      At all times relevant, Defendant Dr. Abubakar Atiq Durrani (hereinafter "Dr. Durrani") was licensed to and did in fact practice medicine in the State of Ohio.

3.      At all times relevant, Center for Advanced Spine Technologies, Inc. (hereinafter "CAST"), was licensed to and did in fact perform medical services in the State of Ohio, and was and is a corporation authorized to transact business in the State of Ohio and Kentucky.

4.      At all times relevant, Journey Lite of Cincinnati, LLC ("Journey Lite") was a Delaware corporation transacting business and performing and managing medical services in the State of Ohio and held itself out to the public, and specifically to the Plaintiff as a center providing competent and qualified medical and nursing services, care and treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

5.      The amount in controversy exceeds the jurisdictional threshold of this Court.

6.      The subject matter of the Complaint arises out of medical treatment by Defendants in Hamilton County, Ohio. This Court is thus the proper venue to grant Plaintiff the relief sought.

2

## FACTUAL ALLEGATIONS OF PLAINTIFF

7. In August of 2012, Plaintiff experienced low back pain and sought relief by visiting his primary care physician and a chiropractor.

8. Plaintiff was referred to a specialist at Christ Hospital and was told that he had a pulled muscle and that nothing more than taking ibuprofen and physical therapy was necessary to treat his back pain.

9. Shortly thereafter, for a second opinion, Plaintiff sought relief from Dr. Durrani. Plaintiff knew of Dr. Durrani because his brother treated with Dr. Durrani before.

10. On December 4, 2012, Plaintiff visited Dr. Durrani for the fist time.

11. At this visit, Dr. Durrani recommended an epidural steroid injection and reviewed Plaintiff's MRIs.

12. At a second visit with Durrani, on December 20, 2012, Dr. Durrani recommended a lumbar hemilaminectomy, foraminotomy, and decompression at L5-S1 on the right side.

13. At this time, Plaintiff was still experiencing some lower back pain.

14. On January 4, 2013, Dr. Durrani operated on Plaintiff at L5-S1, performing a lumbar hemilaminectomy, lumbar foraminotomy, and a lumbar lateral recess decompression using Baxano at L5.

15. Upon information and belief, Dr. Durrani used Baxano without adequate care and instruction, causing Plaintiff harm.

16. After Plaintiff's surgery, Plaintiff experienced muscle spasms and his lower back pain exacerbated to a great degree.

17. Plaintiff treated with Dr. Durrani until April 18, 2013.

3

18. Currently, Plaintiff has severe lower back pain, which has significantly worsened since he underwent treatment with Dr. Durrani.

19. Upon information and belief, the surgery performed by Dr. Durrani was medically unnecessary and improperly performed.

20. As a direct and proximate result of this surgery and Dr. Durrani's actions, Plaintiff has suffered harm.

## DR. DURRANI COUNTS:

## COUNT I: NEGLIGENCE

21. Defendant Dr. Durrani owed his patient, Plaintiff, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

22. Defendant Dr. Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, negligent diagnosis, medical mismanagement and mistreatment of Plaintiff, including but not limited to improper selection for surgery, improper performance of the surgery, and improper follow-up care addressing a patient's concerns.

23. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of the Defendant Dr. Durrani, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

4

## COUNT II: BATTERY

24. Dr. Durrani committed battery against Plaintiff by performing a surgery that was unnecessary, contraindicated for Plaintiff's medical condition, and for which he did not properly obtain informed consent, inter alia, by using Baxano in ways and for surgeries not approved by the FDA and medical community, and by the failure to provide this information to Plaintiff.

25. Plaintiff would not have agreed to the surgeries if they knew the surgery was unnecessary, not approved by the FDA, and not indicated.

26. As a direct and proximate result of the aforementioned battery by Dr. Durrani, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, and incurred substantial medical expenses and treatment.

## COUNT III: LACK OF INFORMED CONSENT

27. The informed consent forms from Dr. Durrani and CAST which they required Plaintiff to sign failed to fully cover all the information necessary and required for the procedures and surgical procedures performed by Dr. Durrani. Dr. Durrani and CAST each required an informed consent release.

28. In addition, no one verbally informed Plaintiff of the information and risks required for informed consent at the time of or before the Plaintiff's surgery(ies).

29. Dr. Durrani failed to inform Plaintiff of material risks and dangers inherent or potentially involved with the surgery and procedures.

5

30. Plaintiff subsequently developed severe and grievous injuries as a direct and proximate result of lack of informed consent.

31. Had Plaintiff been appropriately informed of the need or lack of need for surgery and other procedures and the risks of the procedures, Plaintiff would not have undergone the surgery or procedures.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

32. Dr. Durrani's conduct as described above was intentional and reckless.

33. It is outrageous and offends against the generally accepted standards of morality.

34. It was the proximate and actual cause of Plaintiff's psychological injuries, emotional injuries, mental anguish, suffering, and distress.

35. Plaintiff suffered severe distress and anguish so serious and of a nature that no reasonable man or woman would be expected to endure.

## COUNT V: FRAUD

36. Dr. Durrani made material, false representations to Plaintiffs and their insurance company related to Plaintiff's treatment including: stating the surgeries were necessary, that Dr. Durrani "could fix" Plaintiff, that more conservative treatment was unnecessary and futile, that the surgery would be simple or was "no big deal", that Plaintiff would be walking normally within days after each surgery, that the procedures were medically necessary and accurately reported on the billing to the insurance company, that the surgery was successful, and that Plaintiff was medically stable and ready to be discharged.

37. Dr. Durrani also concealed the potential use of Infuse/BMP-2 and/or Puregen in Plaintiff's surgery when he had a duty to disclose to Plaintiff his planned use of the same.

38. These misrepresentations and/or concealments were material to Plaintiff because they directly induced the Plaintiff to undergo surgery.

39. Dr. Durrani knew or should have known such representations were false, and/or made the misrepresentations with utter disregard and recklessness as to their truth that knowledge of their falsity may be inferred.

40. Dr. Durrani made the misrepresentations both before, during and after the surgery(ies) with the intent of misleading Plaintiffs and their insurance company into relying upon them. Specifically, the misrepresentations were made to induce payment by the insurance company, without which Dr. Durrani would not have performed the surgery(ies), and to induce Plaintiff to undergo the surgery(ies) without regard to medical necessity and only for the purpose of receiving payment.

41. The misrepresentations and/or concealments were made during the Plaintiff's office visits at Dr. Durrani's CAST offices and/or at Journey Lite.

42. Plaintiff was justified in relying on the misrepresentations because a patient has a right to trust his doctor and that the facility is overseeing the doctor to ensure the patients of that doctor can trust the facility.

43. As a direct and proximate result of the aforementioned fraud, Plaintiff did undergo surgery which were paid for in whole or in part by his insurance company, and suffered severe and grievous injuries, paralysis, new and different pain, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of

life, loss of ability to perform usual and customary activities, and incurred substantial

medical expenses and treatment.

## COUNT VI: SPOLIATION OF EVIDENCE

44. Dr. Durrani willfully altered, destroyed, delayed, hid, modified and/or spoiled

("spoiled") Plaintiff's records, billing records, paperwork and related evidence.

45. Dr. Durrani spoiled evidence with knowledge that there was pending or probable

litigation involving Plaintiff.

46. Dr. Durrani's conduct was designed to disrupt Plaintiff's potential and/or actual case,

and did in fact and proximately cause disruption, damages and harm to Plaintiff.

## COUNT VII: LOSS OF CONSORTIUM

47. At all times relevant, the Plaintiffs were married.

48. As a result of the wrongful acts and omissions of Dr. Durrani, Plaintiffs were caused

to suffer, and will continue to suffer in the future, loss of consortium, loss of society,

loss of affection, loss of assistance, and loss of conjugal fellowship, all to the

detriment of Plaintiffs' marital relationship.

49. All the aforesaid injuries and damages were caused proximately by the acts and

omissions of Dr. Durrani.

## CAST COUNTS:

## COUNT I: VICARIOUS LIABILITY

50. At all times relevant, Defendant Dr. Durrani was an agent, and/or employee of CAST.

51. Dr. Durrani is in fact, the owner of CAST.

52. Defendant Dr. Durrani was performing within the scope of his employment with

CAST during the care and treatment of Plaintiff.

8

53. Defendant CAST is responsible for harm caused by acts of its employees for conduct that was within the scope of employment under the theory of respondeat superior.

54. Defendant CAST is vicariously liable for the acts of Defendant Dr. Durrani alleged in this Complaint including all of the counts asserted against Dr. Durrani directly.

55. As a direct and proximate result of Defendant CAST's acts and omissions, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT II: NEGLIGENT HIRING, RETENTION, SUPERVISION & CREDENTIALING

56. CAST provided Dr. Durrani, inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

57. CAST and Dr. Durrani participated in experiments using BMP-2 and/or Puregen bone graft on patients, including Plaintiff, without obtaining proper informed consent thereby causing harm to Plaintiff.

58. CAST breached its duty to Plaintiff, inter alia, by not controlling the actions of Dr. Durrani and the doctors, nurses, staff, and those with privileges, during the medical treatment of Plaintiff at CAST.

59. The Safe Medical Device Act required entities such as CAST to report serious injuries, serious illnesses, and deaths related to failed medical devices to the FDA and the manufacturer; this was never done.

9

60.    Such disregard for and violations of federal law represents strong evidence that

CAST negligently hired, retained, supervised and granted privileges to Dr. Durrani.

61. As a direct and proximate result of the acts and omissions herein described, including

but not limited to failure to properly supervise medical treatment by Dr. Durrani,

Plaintiff sustained severe and grievous injuries, prolonged pain and suffering,

emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the

ability to perform usual and customary activities, and incurred substantial medical

expenses and treatment.

## COUNT III: SPOLIATION OF EVIDENCE

62. CAST, through its agents and employees, willfully altered, destroyed, delayed, hid,

modified and/or spoiled ("spoiled") Plaintiff's records, billing records, paperwork and

related evidence.

63. CAST, through its agents and employees, spoiled evidence with knowledge that there

was pending or probable litigation involving Plaintiff.

64. CAST's conduct was designed to disrupt Plaintiff's potential and/or actual case, and

did in fact and proximately cause disruption, damages and harm to Plaintiff.


## JOURNEY LITE COUNTS:

## COUNT I: NEGLIGENCE

65.    Journey Lite owed its patient, Plaintiff, through its agents and employees the duty

to exercise the degree of skill, care, and diligence an ordinarily prudent health care

provider would have exercised under like or similar circumstances.

66.    Journey Lite acting through its agents and employees breached his duty by failing

10

to exercise the requisite degree of skill, care and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, negligent diagnosis, medical mismanagement and mistreatment of Plaintiff, including but not limited to improper selection for surgery, improper performance of the surgery, improper assistance during Plaintiff's surgery(ies) and improper follow up care addressing a patient's concerns.

67.    The agents and employees who deviated from the standard of care include nurses, physician assistants, residents and other hospital personnel who participated in Plaintiff's surgery(ies).

68. The management, employees, nurses, technicians, agents and all staff during the scope of their employment and/or agency of Journey Lite's knowledge and approval, either knew or should have known the surgery was not medically necessary based upon Dr. Durrani's known practices; the pre-op radiology; the pre-op evaluation and assessment; and the violation of their responsibility under the bylaws, rules, regulations and policies of Journey Lite.

69.    As a direct and proximate result of the aforementioned negligence and deviation from the standard of care by the agents and employees of Journey Lite, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

11

## COUNT II: NEGLIGENT CREDENTIALING & RETENTION

70. As described in the Counts asserted directly against Dr. Durrani, the actions of Dr. Durrani with respect to Plaintiff constitute physician negligence and medical malpractice.

71. Journey Lite negligently credentialed and retained Dr. Durrani as a credentialed physician by:

   a. Allowing Dr. Durrani to repeatedly violate the Journey Lite bylaws with its full knowledge of the same;

   b. Failing to adequately review, look into, and otherwise investigate Dr. Durrani's educational background, work history and peer reviews when he applied for privileges at Journey Lite;

   c. Ignoring complaints about Dr. Durrani's treatment of patients reported to it by Journey Lite staff, Dr. Durrani's patients and by others;

   d. Ignoring Dr. Durrani's previous privilege terminations from other Cincinnati area hospitals, including Children's Hospital, Deaconess Hospital, Good Samaritan Hospital and Christ Hospital.

72. The Safe Medical Device Act required entities such as Journey Lite to report serious injuries, serious illnesses, and deaths related to failed medical devices to the FDA and the manufacturer; this was never done.

73. Such disregard for and violations of federal law represents strong evidence that Journey Lite negligently granted and retained privileges for Dr. Durrani.

74. As a direct and proximate result of the negligent credentialing and retention of Dr. Durrani, Plaintiff sustained severe and grievous injuries, prolonged pain and

suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment that Plaintiff would not otherwise have incurred had Dr. Durrani not been credentialed by Journey Lite.

## COUNT III: FRAUD

75. Journey Lite sent out billing to Plaintiffs at their home following Plaintiff's surgery at Journey Lite.

76. The exact dates these medical bills were sent out are reflected in those medical bills.

77. These bills constituted affirmative representations by Journey Lite that the charges related to Plaintiff's surgery were medically appropriate and properly documented.

78. The bills were sent with the knowledge of Journey Lite that in fact Plaintiff's surgery was not appropriately billed and documented and that the service rendered at Journey Lite associated with Dr. Durrani was not appropriate.

79. The bills sent by Journey Lite to Plaintiff's falsely represented that Plaintiff's surgery was appropriately indicated, performed and medically necessary in contra-indication of the standard of care.

80. Plaintiff relied on the facility holding Dr. Durrani out as a surgeon and allowing him to perform surgeries at its health care facility as assurance the facility was overseeing Dr. Durrani, vouching for his surgical abilities, and further was appropriately billing Plaintiff for Journey Lite's services in association with Dr. Durrani's surgery. As a direct and proximate result of this reliance on the billing of Journey Lite Plaintiff incurred medical bills that they otherwise would not have incurred.

## COUNT IV: SPOLIATION OF EVIDENCE

81. Journey Lite through its agents and employees, willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, billing records, paperwork and related evidence.

82. Journey Lite through its agents and employees, spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

83. Journey Lite's conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

## COUNT V: LOSS OF CONSORTIUM

84. At all times relevant, the Plaintiffs were married.

85. As a result of the wrongful acts and omissions of Journey Lite, Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, loss of affection, loss of assistance, and loss of conjugal fellowship, all to the detriment of Plaintiffs' marital relationship.

86. All the aforesaid injuries and damages were caused proximately by the acts and omissions of Journey Lite.

## JOUNREY LITE OF CINCINNATI, LLC COUNTS:

## COUNT I: VICARIOUS LIABILITY

87. At all times relevant, Defendant Dr. Durrani was an agent, apparent agent, and/or employee of Journey Lite.

88. Dr. Durrani is in fact, a partial owner or shareholder of Journey Lite.

14

89. Defendant Dr. Durrani was performing within the scope of his agency, real or apparent with Journey Lite during the care and treatment of Plaintiff.

90. Defendant Journey Lite is responsible for harm caused by acts of its agents and apparent agents for conduct that was within the scope of agency under the theory of respondeat superior.

91. Defendant Journey Lite is vicariously liable for the acts of Defendant Dr. Durrani alleged in this Complaint including all of the counts asserted against Dr. Durrani directly.

92. As a direct and proximate result of Defendant Journey Lite's acts and omissions, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

**COUNT II: NEGLIGENT CREDENTIALING & RETENTION**

93. As described in the Counts asserted directly against Dr. Durrani, the actions of Dr. Durrani with respect to Plaintiff constitute physician negligence and medical malpractice.

94. Journey Lite negligently credentialed and retained Dr. Durrani as a credentialed physician by:

    a. Allowing Dr. Durrani to repeatedly violate the Journey Lite bylaws with it's full knowledge of the same;

15

b. Failing to adequately review, look into, and otherwise investigate Dr. Durrani's educational background, work history and peer reviews when he applied for privileges at Journey Lite;

c. Ignoring complaints about Dr. Durrani's treatment of patients reported to it by Journey Lite staff, Dr. Durrani's patients and by others;

d. Ignoring Dr. Durrani's previous privilege terminations from other Cincinnati area hospitals, including Children's Hospital, Deaconess Hospital, Good Samaritan Hospital, Christ Hospital and West Chester Hospital.

95. The Safe Medical Device Act required entities such as Journey Lite to report serious injuries, serious illnesses, and deaths related to failed medical devices to the FDA and the manufacturer; this was never done.

96. Such disregard for and violations of federal law represents strong evidence that Journey Lite negligently granted and retained privileges for Dr. Durrani.

97. As a direct and proximate result of the negligent credentialing and retention of Dr. Durrani, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment that Plaintiff would not otherwise have incurred had Dr. Durrani not been credentialed by Journey Lite.

**COUNT III: FRAUD**

98. Journey Lite sent out billing to Plaintiff at their home following his surgery at Journey Lite.

99. The exact dates these medical bills were sent out are reflected in those medical bills.

16

100. These bills constituted affirmative representations by Journey Lite that the charges related to Plaintiff's surgery were medically appropriate and properly documented.

101. The bills were sent with the knowledge of Journey Lite that in fact Plaintiff's surgery was not appropriately billed and documented and that the service rendered at Journey Lite associated with Dr. Durrani was not appropriate.

102. The bills sent by Journey Lite to Plaintiff's falsely represented that Plaintiff's surgery was appropriately indicated, performed and medically necessary in contra-indication of the standard of care.

103. Plaintiff relied on the facility holding Dr. Durrani out as a surgeon and allowing him to perform surgeries at its health care facility as assurance the facility was overseeing Dr. Durrani, vouching for his surgical abilities, and further was appropriately billing Plaintiff for Journey Lite's services in association with Dr. Durrani's surgery(ies).

104. As a direct and proximate result of this reliance on the billing of Journey Lite, Plaintiff incurred medical bills that they otherwise would not have incurred.

**COUNT IV: SPOLIATION OF EVIDENCE**

105. Journey Lite through its agents and employees, willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, billing records, paperwork and related evidence.

106. Journey Lite through its agents and employees, spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

107.    Journey Lite's conduct was designed to disrupt Plaintiff's potential and/or actual

case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

---

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request and seek justice in the form and procedure of a

jury, verdict and judgment against Defendants on all claims for the following damages:

1.      Past medical bills;

2.      Future medical bills;

3.      Lost income and benefits;

4.      Lost future income and benefits;

5.      Loss of ability to earn income;

6.      Past pain and suffering;

7.      Future pain and suffering;

8.      Plaintiff seeks a finding that his injuries are catastrophic under Ohio Rev. Code
§2315.18;

9.      All incidental costs and expenses incurred as a result of his injuries;

10.     The damages to their credit as a result of their injuries;

11.     Loss of consortium;

12.     Punitive damages;

13.     Costs;

14.     Attorneys' fees;

15.     Interest;

16.     All property loss;

17.     All other relief to which they are entitled including O.R.C. 1345.01

Based upon 1-17 itemization of damages, the damages sought exceed the minimum

jurisdictional amount of this Court and Plaintiff seeks in excess of $25,000.

Respectfully Submitted,

/s/ Eric C. Deters
Eric C. Deters (# 38050)
Attorney for Plaintiff
5247 Madison Pike
Independence, KY 41051
859-363-1900 Fax: 859-363-1444
eric@ericdeters.com

## JURY DEMAND

Plaintiff makes a demand for a jury under all claims.

/s/ Eric C. Deters
Eric C. Deters

# IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO
### CIVIL DIVISION

KEVIN AND JILL SCHMIT,    :

          :    Case No.

          :

    Plaintiffs,    :    Judge

          :

          :

v.          :  **MOTION FOR EXTENSION OF TIME**

          :  **TO FILE AFFIDAVIT OF MERIT**

          :

ABUBAKAR ATIQ DURRANI, M.D., et al :

          :

          :

    Defendants.    :

---

Comes now Plaintiffs, Kevin and Jill Schmit, through Counsel, and file this Motion for an Extension of Time for 90 days to file an Affidavit of Merit in support of Plaintiff's medical negligence claim.

Notably, Plaintiff's claims related to Billing Fraud, Battery, Spoliation of Evidence, Intentional Infliction of Emotional Distress do not require an affidavit of merit.

Furthermore, this case was filed, inter alia, to preserve all applicable statutes of limitation. Therefore, Plaintiffs respectfully request a brief opportunity to acquire all relevant medical records, billing, and radiology imaging files, and have Plaintiffs' retained expert medical consultants review the records.

As further support for an extension of time, Defendants have been dilatory in producing complete, accurate medical, radiology imaging, and billing records. The Defendants' delay and/or refusal to produce these records is unfairly prejudicial to Plaintiff.

Defendant's billing and record keeping practices are also under investigation as part of Plaintiff's case in chief. In this context, a brief extension is reasonable. Plaintiff thus reiterates the request for a brief time to acquire, and review the records. This process must be completed prior to the expert signing the affidavit of merit.

Finally, the Court should be aware that this case was filed in combination with other, related lawsuits against these same Defendant's arising from substantially similar conduct causing similar damages to other Plaintiffs. The wrongful billing scheme was part of a pattern and practice of fraudulently performing medically unnecessary and experimental spine surgeries, while reaping huge financial gains. Many of these cases have been reviewed, and affidavits of merit signed. Each review is expensive, complicated, and takes time.

Based on the other substantially similar claims against Dr. Durrani, Plaintiff's nurse consultant review, and the preliminary medical documents, the case is unquestionably supported by Ohio law.

***THEREFORE***, Plaintiffs respectfully request a ninety (90) day extension to file their affidavit of merit; an opportunity to be heard if the relief is not granted; and Court oversight in the medical records production, which have not been timely produced by Defendants, if necessary.

Respectfully submitted,

\s\ Eric C. Deters

**Eric C. Deters (38050)**
**ERIC. C. DETERS & PARTNERS, PSC**
**5247 Madison Pike**
**Independence, KY  41051**
**Phone:  (859) 363-1900**
**Fax:  (859) 363-1444**
**eric@ericdeters.com**



## COMMON PLEAS COURT
## HAMILTON COUNTY, OHIO

Kevin and Jill Schmit

CASE NO. _____ A 1 4 0 0 0 0 9

**VS**

Abubakar Atiq Durrani MD et al.

**WRITTEN REQUEST FOR SERVICE**
**TYPE OF PAPERS TO BE SERVED ARE**

Complaint & Motion For Extension of Time To File AOM

( ☐ ) **PLEASE CHECK IF THIS IS A DOMESTIC CASE**

**PLAINTIFF/DEFENDANT REQUESTS:**

**CERTIFIED MAIL SERVICE** X_____

**PERSONAL SERVICE** _____

**PROCESS SERVICE** _____

**EXPRESS MAIL SERVICE** _____

**REGULAR MAIL SERVICE** _____

**RESIDENCE SERVICE** _____

**FOREIGN SHERIFF** _____

ON ___ Center For Advanced Spine Technologies, Inc.: Serve: CT Corporation System 1300 East 9th St. Ste 1010 Cleveland, Ohio 44114

Journey Lite of Cincinnati, LLC; Serve: CT Corporation System 1300 East Ninth Street Cleveland, Ohio 44114

**FILED JAN -2 P 2: 36**
**TRACY WINKLER CLERK OF COURTS HAMILTON COUNTY, OH**

# Eric C. Deters

**ATTORNEY**

5247 Madison Pike Independence, KY 41051

**ADDRESS**

## 859-363-1900

**PHONE NUMBER**

## 38050

**ATTORNEY NUMBER**

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

REQUEST AND INSTRUCTIONS FOR ORDINARY MAIL SERVICE

**Kevin and Jill Schmit**

*Plaintiff*

-vs-

**INSTRUCTIONS TO THE CLERK**

CASE NUMBER: A 1 4 0 0 0 0 9

Abubakar Atiq Durrani, M.D., et al.

**Defendant**

**IF SERVICE OF PROCESS BY CERTIFIED MAIL IS RETURNED BY THE POSTAL AUTHORITIES WITH AN ENDORSEMENT OF "REFUSED" OR "UNCLAIMED" AND IF THE CERTIFICATE OF MAILING CAN BE DEEMED COMPLETE NOT LESS THAN FIVE (5) DAYS BEFORE ANY SCHEDULED HEARING, THE UNDERSIGNED WAIVES NOTICE OF THE FAILURE OF SERVICE BY THE CLERK AND REQUESTS ORDINARY MAIL SERVICE IN ACCORDANCE WITH CIVIL RULE 4.6 (C) OR (D) AND CIVIL RULE 4.6 (E).**

**Eric C. Deters**

**ATTORNEY OF RECORD**          (TYPE OR PRINT)

01/02/2014

**DATE**

**\s\Eric C. Deters**

**ATTORNEY'S SIGNATURE**

